. Yazoo & Mississippi Valley Railroad Company *v.*
E. N. May.

[61 South. 449]

1. DAMAGES.  *Actual.  Punitive.  Appeal and error.*

Actual or compensatory damages is the amount awarded to make the plaintiff whole in his loss.  Punitive or exemplary damages is an award in the nature of a punishment for wrongdoing and an example so that others may be deterred from the commission of such wrongs and the public be properly protected.

2. APPEAL AND ERROR.  *Exemplary damages.  Question for jury.*

The amount of punitive damages awarded in a proper case is left . to the sound judgment of the jurors and this province of the jury should not be interfered with, unless it should appear that the amount awarded was so apparently execessive as to evince passion and prejudice on their part.

APPEAL from the circuit court of Bolivar county.
HON. SAM COOK, Judge.

Suit by E. N. May against the Yazoo & Mississippi Valley Railroad Company.  From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* attorneys for appellant.

*Thos. S. Owens* and *Percy Bell,* attorneys for appellee.

No brief of counsel on either side found in the record.

Reed, J., delivered the opinion of the court..

We do not find any error in the trial of this case. It is contended by appellee that the verdict is excessive. In order to properly consider this, we should look into the case.

The appellee is quite a young man; in truth, a mere youth. He was about nineteen years old at the time of the alleged mistreatment. He was employed by the railroad company to do certain work at its Greenville station. After an employment of less than a month he was discharged. It is stated that his services were not satisfactory. He asked to be paid for his time, explaining that he was absent from his home, which was in Vicksburg, and without means to pay his board. He went to the company's office on the morning after he was discharged, and was told that authority had been requested to issue him a time check, which should come through the superintendent. The office of this official was in the same building as that of the agent. He was told that the check was expected shortly, and that he might return in the evening of that day to ascertain if it had been received. He did return that evening, and was engaged in an earnest discussion with the head clerk in the office concerning the check and his need of the money, when the agent of the company interrupted the conversation, insulted him, and put him out of the building. Now, the agent's account of what occurred differs from that testified to by appellee. But the jury had the right to believe appellee's statement of what transpired. Not only did they have this right to so believe him, but, from the verdict, we must believe that they did accept his testimony as the true version of the occurrence.

Touching the right of the jury to believe appellee's account, we note that the appellant, defendant in the court below, asked for and was given by the court two instructions, which told the jury that they have a right to believe or disbelieve any witness, in whole or in part, and that in

determining the credibility of any witness they could take into consideration all of the facts and circumstances and the demeanor of the witness on the stand, as well as his interest in the suit, and that it is for the jury to say what belief they will give to the testimony of each witness. Now, it will be seen that the question of the verdict being excessive must be determined by the occurrence as stated by appellee. The agent says that he was acting in the scope of his authority, and as the agent of appellant, when he cursed appellee and put him out. He admits applying to appellee a very insulting epithet. Appellee testifies that he did not give the agent any occasion for his anger and abuse, and that while he was talking with the clerk about the wages due him in a reasonable and proper way the agent burst from an inner office and into their presence with great anger and in a threatening manner ordered him out, said he would kick him (appellee) out if he did not go, and did actually take hold of him and push him through the door. During all the attack the agent was cursing appellee and applying to him the vilest and most insulting epithets.

We would not for a moment think of uttering the words used, because they are so inconceivably disgusting; we would not write them on these pages. We cannot imagine how words more insulting could be found in the vilest vocabulary. To Mississippians their use has in past years been considered a mortal offense. In this state, where women are respected and honored, and mothers are loved and revered, such profane and degrading words as were directed by the company's agent at the appellee were enough to produce an insult deeper and more lasting than in man's power to estimate. The record shows that the agent was a man of mature years, who had been in the service of the company over twenty years. We see, therefore, a man in a prominent and responsible position insulting in the manner stated a youth just beginning life. It is true the agent said that he did not use all of the vile

terms mentioned by appellee. However, upon cross-examination, he admitted that he applied such words to negroes. The jury might well have concluded that, as he had been accustomed to so curse the helpless colored man, it was not at all improbable tht in his sudden anger he hurled the same words at this youth.

To spread the kind cloak of charity over his conduct, we may decide that his nerves were at a high tension, resulting from overwork in an effort to accomplish the task set for him by the company. In this condition, even the earnest demands of appellee for the wages owing him was enough to put him into a sudden passion and to cause him to lose his self-control. This may lead to a sympathy for the man; still it will not justify the insults—it will not relieve the appellant from liability. It must be borne in mind that appellee had a right to go to the office of appellant, and in fact he had been invited to return. He had business with the appellant in the collection of the wages due him; he was not a trespasser; he was entitled to receive such fair and courteous treatment as should have been accorded to all those visiting that office on business.

Counsel for appellant in their brief say:

"It is true that the language imputed to this station agent was of the vilest possible; but after all it was nothing but talk." Words are often very cruel and inflict deep wounds. Much suffering has resulted from what might be termed mere talk. In contemplating the words used in this case we must keep in mind the feelings, manners, and life of the people where the incident occurred. Certain profane and indecent language applied to a Mississippian would be grievously insulting, and might result in a mortal combat, yet the same words used among people of another section of our nation might be treated lightly and not give offense. There is a statute in this state (section 1501, Code of 1906) which permits a defendant to give in evidence in excuse or justification of an assault any insulting words used by the person upon

whom the assault is committed. In short, this statute seems to place the use of insulting words as the beginning of an altercation, like a first blow. We know that in the past such insulting language as that shown by the record in this case was frequently resented by personal difficulty, often ending in death to one of the parties. There appears to be a tendency in recent years to bring such wrongs into the civil courts and ask for reparation through the law. The juries appear to have approved this by awarding damages in cases of assault or insult.

This action, of course, includes exemplary or punitive damages. We recognize the difference between such damages and that given to compensate plaintiff. In the latter case the amount is awarded to make the plaintiff whole in his loss; in punitive or exemplary damages the award is in the nature of a punishment for wrongdoing and an example, so that others may be deterred from the commission of such wrongs and the public be properly protected. The amount of damages in such cases is left to the sound judgment of the jurors. This province of the jury should not be interferred with, unless it should appear that the amount awarded was so apparently excessive as to evince passion and prejudice on their part. In discussing this subject, delivering the opinion of the court in the case of *Railroad Co.* v. *Williams,* 87 Miss. 344, 39 South. 489, Truly, J., said: "There is no inflexible guide by which the jury can be conducted to their determination of the amount of the penalty which must be inflicted to adequately punish the culprit and protect the public. They hear the testimony, and if the case be one which legally warrants the infliction of exemplary damages, they, in the exercise of their own unconstrained discretion, decide whether they will impose any penalty. They cannot be directed or required to award any sum in punitory damages, no matter how flagrant the transgression of public or private right may be in the mind of the court. Neither, in cases where such damages are per-

mitted, can their province of assessing such sum as they may think proper be invaded. They may refuse to award any sum in punitory damages, without regard to the evidence. They cannot do this in actions for compensatory damages; for in that class of cases, where the damages are shown, the jury may be peremptorily instructed to find for the party injured and assess actual or compensatory damages. So, in a case of punitory damages, were they decide that punishment shall be inflicted, the jury are the sole judges, and they may inflict such damages as they 'see fit,' sufficient to protect the public and deter the wrongdoer.''

This case was properly submitted to the jury; they have in their discretion made an award of damages; it was in their province to determine the amount; and we cannot see that they have exceeded their authority. We will not disturb the verdict for six thousand dollars in favor of appellee.

*Affirmed.*