GALTNEY *et al. v.* WOOD.*

(Division A.   Jan. 2, 1928.)

[115 So. 117.   No. 26780.]

1. DAMAGES. *Five thousand dollars for serious and possibly permanent personal injuries in automobile collision held not excessive.*

   Verdict for five thousand dollars for various personal injuries from an automobile collision, broken arm, fractured ribs, injured hip, and general bruising of body with resultant pain and suffering, and the physician unable to say six months after the accident whether injury is permanent, *held* not subject to be disturbed as grossly excessive.

2. DAMAGES. *Submission of punitive damages held authorized by evidence of defendant's automobile approaching street intersection at speed of forty miles per hour.*

   Evidence in action for injury from collision of automobiles at intersection of streets, that defendant when approaching the intersection was driving at a speed of forty miles per hour, *held* to warrant submission of the matter of punitive damages.

3. APPEAL AND ERROR. *General objection to answer held insufficient to allow review on ground of incompetency of unresponsive part of answer.*

   Where in personal injury case, after the court had ruled that it was incompetent to show that defendant carried insurance, and objection to question to plaintiff's husband, "Did he (defendant) make any statement about making out your account and giving it to him?" that that was an offer to compromise, was overruled, said witness answered that defendant told him to go ahead and take care of plaintiff and present the bill to the insurance company, mere general motion to exclude the answer was insufficient objection to allow review to the extent of the irresponsive and incompetent part of the answer of the denial of the motion.

4. HUSBAND AND WIFE. *It is duty of husband to furnish wife necessities, notwithstanding her emancipation from disability.*

   Notwithstanding the emancipation of married women from the disability of coverture, the common-law rule of the duty of the husband to furnish her necessaries still obtains.

5. HUSBAND AND WIFE. *Wife cannot, as part of damages for personal injury, recover for necessary medical bills, unless shown to have been paid or contracted to be paid from her separate estate.*

A married woman cannot, as part of her damages for personal injuries, recover for necessary bills for doctor, medicine, and hospital for which the husband is primarily liable, unless she shows that they have been paid, or contracted to be paid, out of her separate estate, and so not where she not only fails to make any showing in that respect, but prevents defendant from ascertaining which of the two, plaintiff or her husband, was bound.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 833, n. 1; Damages, 17CJ, p. 1059, n. 63 New; p. 1091, n. 85; Husband and Wife, 30CJ, p. 593, n. 30; p. 967, n. 81; On excessiveness of verdicts in actions for personal injuries not resulting death, see annotation in L. R. A. 1915F, 30; 46 A. L. R. 1230.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Action by Mrs. Eva Wood against D. G. Galtney and another. Judgment for plaintiff, and defendants appeal. Affirmed on condition of remittitur.

*Conn & Conn,* for appellants.

That the husband is primarily bound for the necessaries of his wife was announced by this court, in *Dunbar v. Meyer & Co.,* 43 Miss. 679, in no uncertain terms. This doctrine has been consistently followed by this court and we have not been able to find anything in our law since this case was decided that has changed or modified in any way the doctrine therein announced. This court declared in the case of *CanDiver v. Buckley,* 1 So. 633, that the removal of the disabilities of coverture did not modify or change this rule. That the husband is liable for the reasonable necessities of the wife, including necessary medical attention, is the rule wherever the common law is in force, except where modified by statute. See

30 C. J. 516 et seq., and cases cited in the notes; *Bushnell* v. *Bushnell,* 44 A. L. R. 785.

Deliberately and over the objection of defendants, with the full sanction of the court, it was shown to the jury that the defendant carried insurance against such accidents, without its having any bearing whatever upon any issue in the case, then before the court. Was this harmful error? See *Herrin, Lambert Co.* v. *John Patrick Daly,* 80 Miss. 340; *Yazoo City* v. *Loggin,* 145 Miss. 793, 110 So. 833; *Wilkins* v. *Schwartz,* 132 S. E. 887; *Sawyer* v. *J. M. Arnold Shoe Co.,* 90 Me. 369, 38 Atl. 333; *Ross* v. *Willamette Valley Transfer Co.,* 248 Pac. 1088; *Wells* v. *Morrison,* 256 Pac. 641; *Ronan* v. *J. G. Turnbull Co.,* 131 Atl. 788; *Arizona Cotton Oil Co.* v. *Thompson,* 245 Pac. 673.

We come next to the matter of punitive damages. Was this a case warranting the submission of the question to the jury? If so, was the matter properly presented in the instruction for the plaintiff? See *Storm* v. *Green,* 51 Miss. 103; *Biloxi City R. Co.* v. *Maloney,* 74 Miss. 738; *Vicksburg Railroad Power & Mfg. Co.* v. *Martlett,* 78 Miss. 872; *Illinois Central R. R. Co.* v. *Dodds,* 53 So. 409; *Yazoo & M. V. R. R. Co.* v. *Hardie,* 55 So. 967; *Godfrey* v. *Meridian Light & Railway Co.,* 101 Miss. 565. These are the principal cases, as we believe, in this state, dealing with the question of when punitive damages are proper to be inflicted, and when not. It would serve no useful purpose to review the facts in these cases, as it would throw no light on the case now before the court. In the case at bar there was no fraud, malice, oppression, wilful or intentional wrong, or insult. This leaves only gross negligence in the list, so gross as to be equivalent to wilful wrong. Was there such negligence in this case? It is conceded that Henderson was driving at a rate of speed, at the time he first sighted the Wood's car, in excess of that allowed by law for incorporated towns. But that, of itself, does not warrant the infliction of punitive damages. The case is not made out by merely showing

the unlawful rate of speed; but causal connection must be shown between the unlawful speed and the injury sustained. 77 Miss. 511. This doctrine was announced by this court in a railroad case, although the statute made railroads responsible for all injury and damage inflicted while exceeding the speed limit. No such law applies to motor vehicles in the streets. Granted, that causal connection was established between the rate of speed in the case at bar and the injury sustained by appellee, it does not follow that appellants are subject to punitive damages. *Railway Co.* v. *Free,* 95 Miss. 730; *Stevens* v. *Railroad Co.,* 81 Miss. 195; *Ulmer* v. *Pistole,* 115 Miss. 485. There was not present any negligence in this case even approximating wilful or wanton negligence, and the court should not have submitted the question of punitive damages to the jury in any form.

*W. C. Sweat,* for appellee.

It is true that, under the common law, the husband is liable for the necessaries of life for his wife; and it is also true that, under the statutes emancipating married women and permitting them to own and control their own property, to enter into contracts, to sue and be sued, and to permit husband and wife to sue each other, this does not relieve the husband from the obligation of providing for his wife the necessary means of support; but that principle of law does not prevent the wife from recovering the reasonable expenses growing out of the injuries inflicted upon her by the defendants in this cause. *Memphis & C. R. R. Co.* v. *Whitfield,* 44 Miss. 446; *Hollingshead* v. *Y. & M. V. R. R. Co.,* 100 Miss. 464, 55 So 40.

The authorities from this court, quoted from by appellee's counsel, are not at all in point. They lay down the general rule that the husband is liable for the wife's necessities, which is not denied by us, but he has cited no cases from this court, holding that married women may not recover for the necessary medical expenses and doc-

tor's bills, on account of injuries inflicted upon her. I find only one case which was decided by this court in which the question raised by the appellant in this case was presented to the court for decision, and that is *Thomas* v. *Weeks,* 115 Miss. 603, 76 So. 558, which see.

The appellant is not in a position to raise this question. There was no plea to the effect that the plaintiff was not entitled to recover for these items by reason of the fact that her husband was liable therefor, and no notice under the general issue to this effect. *R. R. Co.* v. *Grant,* 86 Miss. 565; *Title* v. *Bonner,* 53 Miss. 578. See further: *Krisinger* v. *City of Creston,* 119 N. W. 526; *Schulte* v. *Holliday* (Mich.), 19 N. W. 752; *Adams Express Co.* v. *Aldridge* (Col.), 77 Pac. 6.

It will be seen from the testimony that the statement that Mr. Galtney was insured was disclosed by the witness as a mere incident, and that it was not the object of the question propounded to bring out the fact that Galtney carried insurance, but as tending to show Galtney's admission of liability, which was clearly competent.

The first answer given by witness in which he stated that Mr. Galtney carried insurance was objected to by counsel without stating any ground of objection whatever. The court stated that he did not think that was competent, and if counsel had moved to have excluded this evidence, the court would, no doubt, have excluded it. Counsel for defendant made no such request; and since counsel made no request to the court that this evidence be excluded, and made no request that the jury be instructed not to consider it, counsel is certainly now in no position to complain of this answer of the witness.

Appellant cites two cases from this court, *Herrin, Lambert & Co.* v. *Daley,* 80 Miss. 340, and *Yazoo City* v. *Loggins,* 110 So. 833. Neither bears out his contention here. See, also, *Harris* v. *P. Koenig Coal Co.* (Mich.), 194 N. W. 511; *Greenwold* v. *Faber* (Mich.), 207 N. W. 911; *Gibbs* v. *Barton,* and *McDavid* v. *Barton* (N. J.), 130 Atl. 439; *Fitzgerald* v. *DeMott* (N. J.), 128 Atl. 545; *Jones* v. *Sin-*

*sheimer* (Ore.), 214 Pac. 375; *Edwards* v. *Lamber and Wife* (Wash.), 209 Pac. 694; *Jacoby* v. *Kelly* (C. C. A., 3rd Circuit), 296 Fed. 590; *Sims* v. *Martin* (Ga.), 126 S. E. 872.

The appellant contends next that the case made by this record did not justify the court in submitting to the jury the question of punitive damages, and that the question of punitive damages was not properly presented to the jury in the instruction given the plaintiff. See *Storm* v. *Green,* 51 Miss. 103; *Ill. Central R. R. Co.* v. *Dodds,* 53 So. 409; *Y. & M. V. Railroad Co.* v. *Hardy,* 100 Miss. 132, 55 So. 967; *Ulmer* v. *Pistole,* 115 Miss. 485, 76 So. 522.

Argued orally by *W. C. Sweat,* for appellee.

McGOWEN, J., delivered the opinion of the court.

Mrs. Eva Wood, appellee, filed her declaration in a suit for damages for personal injuries sustained by her in an automobile collision, claimed to have been inflicted upon her by the negligence of D. K. Galtney, doing business as the Galtney Motor Company, and Burt Henderson, appellants herein. The suit was instituted for compensatory and punitive damages, and for doctor's bills, hospital bills, etc., expenses incurred in her care and treatment made necessary by her injury, an itemized account of which is attached to the declaration. The defendants, appellants herein, filed a plea of general issue, and gave notice that they would offer proof to show that plaintiff, appellee herein, was guilty of contributory negligence.

The proof showed that on the 31st day of January, 1927, in the city of Corinth, at the intersection of Main and Madison streets, Mrs. Wood was severely injured. Both streets are paved, and largely used by automobile traffic. Madison street runs north and south crossing Main street, which runs east and west. The latter street

connects the I. C. Station with the city. In the middle of
Main street is a parkway, with pavement on either side.
On this occasion, Mrs. Wood, driving a Star sedan, was
traveling south on Madison street. Burt Henderson, an
employee of the Galtney Motor Company, was traveling
west on Main street in a Lincoln sedan, in the discharge
of his duties, having another employee of the company in
the car with him at the time the accident occurred. The
Lincoln car driven by Henderson weighed from three
thousand five hundred to four thousand pounds, and the
sedan driven by Mrs. Wood, from one thousand eight
hundred to two thousand pounds. Main street, where
Henderson was driving, had a grade of about three per
cent, and he was going down grade. Mrs. Wood was trav-
eling across this street at the rate of from ten to fifteen
miles per hour; Henderson and his associate claimed that
they were driving at the rate of about twenty miles an
hour. Several witnesses testified, however, that they
were driving at a rate of speed from forty to forty-five
miles an hour. Mrs. Wood testified that, just before en-
tering Main street at the crossing, she looked to the right
and to the left, and, upon seeing no one, proceeded to
cross.

The plaintiff's evidence tended to show that the view
was unobstructed fifteen or twenty feet north of the north
line of Madison street, and on Main street back to the
east about one hundred fifty feet or more. The defend-
ant's testimony tended to show that for about one hun-
dred fifty feet back on Main street an automobile or other
person could not be seen for the trees and a house.

The employees of the defendant testified that, when
they discovered the approach of Mrs. Wood's car, the
brakes of the car were applied and its rear wheels locked
at a time when they were about thirty or thirty-five feet
from the car of Mrs. Wood. Some witnesses testified
that the Lincoln driver applied the brakes to his car about
ninety feet from the point at which he collided with the
Star sedan driven by Mrs. Wood, that the car made its

wheel impression on the asphalt pavement for that distance, and that Mrs. Wood's car was knocked out of Madison street into the parkway a distance of twenty-one feet, and turned around, so that, instead of being headed south, the way she was going, it was turned back to the east, part of the car being thrown up on the parkway around which was a six-inch curb. Mrs. Wood was found unconscious in the car.

There was testimony to the effect that witnesses were attracted to the Lincoln because of the rate of speed at which it was going. The front door of the Star sedan was broken in, and the car otherwise wrecked.

The proof showed that Mrs. Wood's left arm was broken in two places, two of her ribs fractured, her body almost wholly bruised, and that her hip was injured. She was immediately taken to a hospital, where she remained for seventeen days before she was able to be removed to her home, after which it was a long time before she was able to be up any at all; and at the trial of this cause, in July, 1927, she was up only for a part of the time. She testified that since her injury she had been unable to perform any of her household duties, unable to attend church, to do any church work or work in the societies, as was her custom, or to attend any social functions which she was accustomed to going before her injury. The physician stated that he could not tell how long it would take for her to recover, nor whether or not the injury was permanent.

The jury returned a verdict in favor of the plaintiff, for five thousand dollars, from which the defendant prosecutes an appeal here.

1. The first assignment of error we shall consider is the contention of the defendant, appellant here, that the verdict was grossly excessive. We cannot adopt this view suggested by counsel for appellant that the injury complained of, and undisputed in this record, with the physical pain and mental suffering arising therefrom considered, and more than six months having intervened

from the time of the injury to the trial, and the physician not being able to say whether or not she was permanently injured, should not sustain a verdict for five thousand dollars. We do not think we are warranted in disturbing the verdict in this case as being grossly excessive. In fact, if there had been no claim for punitive damages, we could not say that the verdict was excessive as compensatory damages for the injuries and suffering sustained.

2. Counsel for appellant insists that the court erred in instructing the jury that they "might find for punitive damages," and also objects to the form of the instruction on punitive damages. We do not think that there is any merit in this assignment, nor was the court in error in granting an instruction to the effect that it was authorized to allow punitive damages if the jury found that the defendant operated its car at a dangerous, reckless, and unlawful rate of speed. The fact that the plaintiff's evidence, through some of the witnesses, showed that the defendant was driving at a rate of speed equal to or exceeding forty miles an hour when approaching the intersection of the street crossing his pathway upon which she was driving, warranted the court in submitting the question of punitive damages to the jury. If the theory that the car was driven at so reckless a rate of speed as to endanger life and limb, is correct, it is intensified when the defendant's testimony, that he could not see one approaching on Madison street, is considered. While we cannot say that the jury awarded punitive damages in this case considering the injuries, it was not error to have submitted the matter to the jury on the plaintiff's theory of the case.

3. Appellant contends that the court erred "in admitting, over defendant's objection, the evidence of O. M. Wood, husband and witness for the plaintiff, to the effect that Mr. Galtney had told him he carried insurance against such accidents, and for him to go ahead and take care of his wife and present the bill to the insurance

company.'' We are setting out here exactly what oc-
curred in the lower court:

''Q. Mr. Wood, right after this accident did you talk
to Mr. Galtney, or Mr. Galtney, one of the defendants,
talk to you about the accident? A. Yes, sir; Mr. Galt-
ney came to me in the afternoon and—you want me to
tell what he said?

''Q. Yes. A. And he said, 'I am very sorry this ac-
cident happened, but I carry insurance against such acci-
dents as that'—

''Mr. Conn: If the court please, I object to that.

''The Court: It is not competent, of course, against
the insurance company, but it is competent any statement
be made about how the accident occurred, but I don't
think that is competent.

''Q. Did he make any statement about making out
your account and giving it to him?

''Mr. Conn: Now, I object to that, if the court please,
as that is an offer to compromise.

''The Court: No, sir; that is not an offer to compro-
mise. Go ahead. (Defendant excepts.) A. Mr. Galt-
ney told me to go ahead and take care of her and to pre-
sent the bill to the insurance company.

''Mr. Conn: Now, if the court please, I ask that that
be excluded.

''The Court: That is competent. (Defendant ex-
cepts.)''

It will be noted that the court stated that it was not
competent upon the first general objection as to the in-
surance company, but that a statement as to how the ac-
cident occurred was competent. According to our under-
standing of the record, the reference to the insurance
company was held to be incompetent by the court. The
question asked after that ruling of the court did not call
for nor suggest that any reference be made in the an-
swer of the witness to any insurance which the defendant
might have carried, and the objection was not directed to

that point, but, as stated by the counsel, his objection was based upon the fact that it was incompetent, because "it was an offer to compromise." The court properly held that it was not an offer to compromise. A part of the statement was incompetent—that part which referred to the insurance—and from the previous statement of the court, if counsel had directed his objection to the information regarding the insurance volunteered by the witness, the court would have instructed the jury not to consider it. But counsel did not do this. He made no specific objection on the ground of the reference by the witness to an insurance company, or the fact that the defendant was protected by insurance. Counsel must state to the court below fairly the point upon which he desires a ruling. He cannot make an objection, in the court below, upon one ground, and then present an entirely different view in this court. It is an unsafe practice to make general objections to the evidence in the court below and expect a reversal upon the specific objection presented for the first time to this court. Adhering to the rule announced in the case of *Herrin, Lambert & Co.* v. *Daly,* 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605, where the counsel sought to elicit, for the purpose of influencing the jury, the fact that some one was back of the firm who would satisfy the judgment, the court there overruled the objection and held that the effort was an attempt to seduce a verdict from the jury on the ground that the insurance company, and not the defendants, would be affected. The case here is not at all similar to that one—in fact, the point presented here was not made in the court below, and, if it had been, we are not at all sure we would be willing to reverse this case for that reason, because the court below ruled correctly when given an opportunity, and the questions of counsel were not calculated to elicit the answer volunteered by the witness.

4. The fourth assignment of error is as follows:

"In admitting testimony, over defendant's objection, relative to doctor's bills, hospital bills, nurse's bills, etc.,

and in permitting these items to be considered by the jury.''

The declaration charged that the wrong and injuries detailed caused her ''to be at large expense, as set out in the first count,'' etc. The court permitted the plaintiff's husband to testify as to the correctness of the itemized account, but excluded therefrom board for her husband and boys, difference in grocery bill, and services as housekeeper. The court declined to permit the appellant, on cross-examination, to show whether or not the husband or the wife assumed liability, contracted to pay, or had paid, the hospital bills, nurse's bill, and doctor's bill; the court holding that it did not make any difference which one, the husband or the wife, incurred liability, the wife was entitled to recover therefor.

We think the court erred in holding that the wife could recover irrespective of whether or not she had contracted to pay the bills sued for. It is true that married women have been emancipated from the disability of coverture in this state, but it is likewise true that it is the duty of the husband, and he is primarily bound, to furnish necessities to his wife, such as the items sued for herein.

In the case of *Dunbar* v. *Meyer,* 43 Miss. 679, this court held as follows:

''This was fully met by evidence that Sarah M. was the wife of W. H. Dunbar, and that the merchandise was bought by her, and was necessary to herself and children. In this condition of facts the liability was evidently on the husband. It is a principle of law growing out of the marital relation, as a consequence of the obligations assumed by the husband upon marriage, that he shall supply the wife with all necessaries convenient and suitable to their station in life. *Cromwell* v. *Benjamin,* 41 Barb. [N. Y.] 558. The infancy of the husband is no discharge from these obligations nor an answer to a claim for their fulfillment. *Cantine* v. *Phillips,* 5 Har. (Del.) 428; *Cole* v. *Seeley,* 25 Vt. [217] 230 [60 Am. Dec. 258]. If the husband neglect to provide these necessaries,

the wife may make the purchases; and, though he may dissent, he shall nevertheless be liable therefor. *Etherton* v. *Parrott,* 1 Salk. 118. The wife possesses no original inherent power to bind the husband; yet from the circumstance of cohabitation, and the goods being consumed in his family, the assent of the husband will be presumed. *Ogden* v. *Prentice,* 33 Barb. [N. Y.] 164. Justice STORY, in his treatise on Contracts, section 98, states that, if the husband omits to furnish the proper necessaries, he impliedly makes his wife his agent to procure them for herself. According to many of the cases, cohabitation alone will supply the inference of this authority.''

It is true that this decision was rendered before the Code of 1880 and the enactment of the statute emancipating married women from the disability of coverture, but the common law still obtains in this state, and we think that, notwithstanding the removal of this disability of coverture and the grant of suffrage to her, we are still compelled to hold that the common-law rule obtains. It was not competent for the appellee, Mrs. Wood, to show that she had contracted to pay these bills, and it was not necessary for the defendant to interpose a special plea on this behalf for the reason that the matters affirmed in the declaration were put in issue by the plea of general issue. Of course, a married woman, emancipated, can make any lawful contract; and, if it is shown by the plaintiff she had contracted to pay these bills or had paid them, these items would be properly considered as part of the damages to be submitted to the jury for allowance or disallowance. However, she not only failed to show that she paid these bills, or incurred liability therefor, but prevented the defendant from ascertaining which of the two, husband or wife, was bound. See 30 C. J. et seq.; *Bushnell* v. *Bushnell,* 103 Conn. 583, 131 A. 432, 44 A. L. R. 785; *Novy* v. *Breakwater Co.,* 89 Conn. 14, 22, 92 A. 668. In the absence of proof to the contrary, the husband is primarily liable for the wife's necessary doctor's bills,

medicine bills, and hospital bills unless she shall show
that same have been paid or contracted to be paid out
of her separate estate. This rule is not at all in conflict
with, or controlled by, anything in the case of *Thomas* v.
*Weeks,* 115 Miss. 602, 76 So. 559. The instruction com-
plained of in that case was that she (the wife) might re-
cover for all money *she had expended* on account of said
injuries. In other words, the court told the jury, if she
had paid the bills, she could recover.

Counsel for appellee cites the cases of *Krisinger* v.
*City of Creston,* 141 Iowa, 154, 119 N. W. 526, and *Ash-
by* v. *Elsberry et al.,* 111 Mo. App. 79, 85 S. W. 957. An
examination of these authorities convinces us that they
sustain the rule announced by this court, likewise the
case of *Adams Express Co.* v. *Aldridge,* 20 Colo. App.
74, 77 P. 6. In the case of the *Chesapeake & Ohio R. R.
Co.* v. *Stump,* 165 Ky. 708, 178 S. W. 1037, the wife had
paid all the bills, and the contention there was that, be-
cause she got the money from her husband, she ought
not to recover; but the court declined to adopt that the-
ory, saying that it made no difference because she paid
the bill. There are cases from the Missouri court which
seem to support the appellee's theory. We decline to fol-
low that court, in view of the fact that we do not think
the emancipation of women in this state as to separate
property rights has relieved the husband from the obli-
gation to furnish necessities to his wife, and we think
the jury considered these items in making up its ver-
dict. In this regard see section 2185, Hemingway's 1927
Code (section 2517, Code of 1906). Section 2289, Code
1880, does not vary the common-law rule.

Unless appellee shall enter remittitur for these items
amounting to five hundred seventeen dollars and eighty
cents, this case will be reversed and remanded; but, if
remittitur for such amount is entered, the case will be
affirmed.

*Affirmed.*