THOMAS *v.* MICKEL.

April 28, 1952.

No. 38196 (58 So. (2d) 494)

John W. Crisler, and **Roberson, Luckett & Roberson,** for appellant.

180

Appellant in reply.

**McGehee, C. J.**

This appeal is from a judgment in favor of plaintiff A. T. Mickel and against the defendant G. T. Thomas whereby the plaintiff was awarded on the verdict of a jury the sum of $20,000 as both actual and punitive damages, because of an assault and battery committed by the defendant on the plaintiff when he struck him with a heavy stick about 20 inches in length and the approximate size of a straight axehandle, the blow being inflicted on the left side of the plaintiff's head in such manner as to put out his left eye and to cause an injury to some extent to his ear.

The assignments of error here deal primarily with the complaint of the appellant in regard to the issue of punitive damages having been submitted to the jury, and as to the form of some of the instructions granted unto the plaintiff. Of course the submission of the question of punitive damages to the jury would involve an alleged error of the trial court in refusing an instruction to the jury which would have precluded an award of such damages.

On the evening of September 9, 1950, the plaintiff, a Negro boy 20 years of age but who became 21 before the trial of the case in January 1951 and who weighed about 140 pounds, went into the Tip Top Drug Store belonging to the defendant G. T. Thomas, a Negro 66 years of age and weighing about 180 pounds, but who was then in a

nearby barber shop getting a shave. The plaintiff admittedly had divided and drunk two quarts of beer with a friend shortly before going into the place of business of the defendant, and, according to the conflicting evidence, had also drunk some whiskey. Upon entering the drug store, which in reality and according to the testimony was a cafe, the plaintiff bought a bottle of beer from a waitress Mary Brenston, giving her a one dollar bill and requesting the change in nickels, according to his testimony, but, according to her testimony, a fifty cent piece with request that his change be given him in nickels, for the purpose of playing the music box. The plaintiff testified that he accidentally dropped one of the nickels on the floor and told a 13 year old boy, who was the brother of one of the two waitresses, that if he would pick up the nickel he might have it; that when he started to drink the bottle of beer he found the mouth of the bottle broken and got some glass in his mouth and that he thereupon threw the bottle of beer on the concrete floor and spit out the glass; that he was not drunk or disorderly and had not raised a disturbance of any kind.

On the other hand, Mary Brenston testified that she became frightened when the plaintiff threw the bottle of beer against the floor and broke it and because of his disorderly conduct, and that she immediately ran to the barber shop to notify the defendant. Emma Durham, the other waitress, testified, as did likewise her brother Henry Durham, that the plaintiff commanded the boy to pick up the nickel and got mad when Henry Durham told the boy not to do so; that the plaintiff thereupon threw the bottle of beer on the concrete floor and broke it and then picked up a Coca-Cola bottle to throw through the glass window or front of the store and that she caught the Coca-Cola bottle and prevented him from doing so, and that he was raising a disturbance in the place of business. Henry Durham corroborated the defendant as to what transpired upon the arrival of the defendant at his place of business.

The plaintiff further testified that he asked Emma to give him a broom and shovel and that he would clean up the floor; that thereupon the defendant walked in and said, "you is the Nigger in here making this trouble." The plaintiff replied, " 'no, I'm not making any trouble,' and he shoved me on the shoulder and kept shoving. He said 'you don't know who you are messing with. Get out of here and don't never come back in here no more.' He just kept pushing me. I said 'you ain't got to try to throw me out; I ain't did nothing wrong in your place— first time I busted a bottle of beer on the floor.' He said 'get out, you want to be smart. Get out before I take this Coca-Cola bottle and beat your head.' I told him he wasn't going to do nothing with the Coca-Cola bottle. He kept saying something to me. I said 'I don't care, nobody going to throw me out when I ain't done nothing wrong.' I said 'if you will put the Coca-Cola bottle down I will go out like a man.' He put it down and I walked on to the door, but by there being so many people at the door, I couldn't get out. He said 'you still ain't going to get out?' I said I will as soon as the people get back off the door. When they stood back I walked on out of the place. Somebody on the outside said 'come on, let's go down the street and you tell me about it.' I said 'all right, I know how he is; he will keep saying stuff to me.' I walked on down in front of the Watch Shop." It was in front of the Watch Shop that he was later struck the blow with the stick by the defendant.

The defendant tesified in substance that Mary Brenston came to the barber shop very much excited and reported the disturbance in the cafe to him; that he immediately left the barber shop with some of the shaving lather on his face, went to the cafe and found the plaintiff in there, found the broken bottle on the floor, and walked up to the plaintiff and said, "Young man, don't tear up my business here; I don't want you to do that; you will have to get out of here. You mustn't carry on like this." That

the plaintiff said, "I will get out of here when I get ready; I am not afraid of you, you ball headed son of a bitch." That the defendant caught hold of his arm and pulled him and got him to the door and that the plaintiff got out and got against the door and would not let the defendant out or let any customers in the cafe. That finally some one on the outside succeeded in getting the plaintiff away from the door and that after he got away from the door the defendant went on to his office next door. His office was in a back room of the one story building and that when he got to his office he was about exhausted; that he went back there and sat down in a chair to relax; that he heard the plaintiff continue "to carry on out there—cursing and going on—saying 'I am not afraid of the son of a bitch' "; that some one told the plaintiff "Don't go in there boy; get away from here." And that plaintiff kept standing out near the front of the cafe and office and continued to repeat that he was not afraid of the defendant, etc.

It was then that the defendant says that he decided to go out there and bluff the boy away from there, and that he picked up the stick in his office for that purpose; that he went out there with the stick and said "Look here, boy, why don't you go on away from here and not try to tear up my place and everything." That the plaintiff again said, "I am not afraid of you, you ball headed son of a bitch." That the defendant continued his effort to get the plaintiff to leave and that the plaintiff thereupon stepped back and made a "pocket play" as if to draw a knife or a gun, and that he then hit him. That thereupon they both fell to the ground in a tussle.

The plaintiff testified that he was not cursing or doing any loud talking on the outside, but was merely explaining to those who came near and telling them what had caused the excitement; that the defendant approached him from behind, touched him on the shoulder and neck and that when he turned around the defendant struck him with a stick at a time when he was not attempting to do

the defendant any harm. He was corroborated at least to the extent that he was not cursing the defendant or trying to do him any harm, or engaged in any loud talking at the time when he was struck with the stick or immediately prior thereto after he had been put out of the cafe. Moreover, one of the witnesses for the defendant who was at the Watch Store near enough to have heard what was going on outside and better than the defendant could have heard it from back in his office, testified that he did not hear any loud talking or cursing immediately prior to the assault with the stick.

Therefore, we have concluded that the testimony is so conflicting both on the issue of fact as to what occurred inside the cafe and as to what occurred on the outside that the case presented an issue of fact for the jury both on the question of actual and punitive damages. It would unduly prolong this opinion to review in detail the testimony of the numerous witnesses in the case.

The defendant did not request an instruction for the mitigation of the damages on the ground that the plaintiff had provoked the difficulty by reason of what may have occurred in the cafe. He did request and obtain an instruction as to the right of a person to eject another from his place of business when such other is raising a disturbance, etc.

The defendant did set forth in his answer his theory of what occurred in the cafe and introduced testimony in support of that theory, but as a witness in his own behalf he repeatedly stated that his reason for striking the plaintiff with the stick was the alleged fact that he had reason to believe that the plaintiff was about to do him great bodily harm. He testified that he would not have struck the plaintiff had the latter not made the ''pocket play'' as if to draw a knife or gun.

The case was submitted to the jury under instructions for the defendant dealing primarily with his plea of self-defense. The jury rejected this defense and evidently belied that the defendant went to his office, got the stick

and deliberately committed the assault and battery on the plaintiff, and that whatever may have occurred on the inside of the cafe was not a sufficient provocation for so doing, since the jury was entitled to believe the plaintiff's version as to what had in fact occurred in the cafe.

We have carefully examined the instructions granted unto the plaintiff and which are complained of by the defendant and we are unable to say that either of them was erroneous.

As to whether or not the verdict was excessive in amount, the proof on behalf of the plaintiff disclosed that his vision in one eye was destroyed; that he suffered some injury to his ear, and that his efficiency as an employee of the company where he worked as a porter and delivery boy and performed other duties has been substantially impaired. The verdict is in a lump sum for both actual and punitive damages and we are, therefore unable to determine as to what portion thereof was assessed as actual damages and as to what portion was assessed as punitive damages.

In the case of Yazoo & M. V. R. Co. v. Williams, 87 Miss. 344, 39 So. 489, 491, this Court said: "It is the long settled and uniformly adhered to rule in our jurisprudence that ▮▮▮ the amount of such punitory or exemplary damages is solely within the discretion of the jury, and, no matter what the sum of their finding might be, interference therewith, unless for exceptional causes, is discouraged * * * the reason being that, as the jury are the sole judges of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative." See Vicksburg & Jackson R. R. Co. v. Patton, 31 Miss. 156; Southern Express Co. v. Brown, 67 Miss. 260, 7 So. 318, 8 So. 425; Yazoo & M. V. R. R. Co. v. Fletcher, 100 Miss. 589, 56 So. 667; Yazoo & M. V. R. R. Co. v. May, 104 Miss. 422, 61 So. 449, 44 L. R. A., N. S., 1138; Planters Wholesale Grocery Co. v. Kincade, 210 Miss. 712, 50 So. (2d) 578.

In the instant case, a list of the defendant's real estate property situated in the City of Clarksdale was introduced and was shown by a real estate dealer to be worth approximately $590,000 and it was shown that the defendant owned other small tracts of farm land situated in the delta and elsewhere. It was competent to thus inquire into the financial condition of the defendant for the guidance of the jury in the assessment of punitive damages, and no point is made as to the competency of such proof.

 While we are of the opinion that the verdict is large and in a greater amount than we prefer to approve, nevertheless we find no basis on which we would feel justified in reducing the same.

A number of comments in the arguments of the attorneys to the jury are objected to as prejudicial to the defendant, but in the absence of a motion for a mistrial on account thereof it is well settled by our decisions that the same will not afford a ground for reversal, and this is especially true where the objections thereto were sustained by the court and the ruling is not followed up by a motion for a mistrial. Some of the objections were overruled but we are of the opinion that those comments in particular were not so prejudicial as to justify us in disturbing the verdict.

The judgment appealed from must, therefore, be affirmed.

Affirmed.

**Hall, Kyle, Holmes** and **Ethridge, JJ.,** concur.