ANDERSON *v.* JENKINS.

Feb. 22, 1954

No. 39020 54 Adv. S. 1 70 So. 2d 535

*L. K. Saul,* Ellisville; *Welch, Gibbes & Butts,* Laurel, for appellant.

148

*Quitman Ross,* Laurel; *Geo. D. Maxey,* Ellisville, for appellee.

KYLE, J.

The appellee, Mack D. Jenkins, plaintiff in the court below, recovered a judgment in the Circuit Court of the First Judicial District of Jones County against the appellant, S. S. Anderson, defendant in the court below, for the sum of $7,500, in an action for damages for assault and battery, and from that judgment the appellant prosecutes this appeal.

The difficulty, which resulted in the alleged shooting of the appellee by the appellant, had its beginning at the gymnasium building of the Moselle Consolidated School in the southern part of Jones County, and the shooting itself took place in front of the appellant's home on U. S. Highway No. 11, about five miles south of the school building and gymnasium. There is much conflict in the testimony of the witnesses concerning the details of the happenings immediately preceding the shooting, but the events which led up to the shooting were substantially as follows:

Some of the teachers and patrons of the Moselle School made arrangements for a ''class party'' to be given at

the school gymnasium on the night of December 6, 1951, at 6:30 or 7:00 o'clock. Mrs. Ray Gibson, one of the teachers, Mrs. Sid Anderson, the wife of the appellant, Mrs. Virgil Walters and two other ladies were in charge of the party. About sixteen young people attended the party as members of the class and invited guests. A group of teen-age boys, who were neither members of the class nor invited guests, appeared at the gymnasium building while the party was under way and threw fire crackers and other explosives into the building and among the members of the group assembled in and around the building. Mrs. Virgil Walters was actually struck by one of the fire crackers and was injured by the explosion. The appellant's proof showed that the appellee, Mack Jenkins, was one of the boys who participated in the disturbance and in the throwing of the fire crackers.

After the disturbance had reached the point where it was apparent that the program of entertainment could not be carried on at the school gymnasium the adult sponsors decided to break up the party at the gymnasium and transfer the children to the home of the appellant and his wife, who lived about five miles south of the Moselle School, on U. S. Highway No. 11. Appellant's wife returned to her home with the invited guests, and the program of entertainment was resumed at the Anderson home. A short time after the crowd had assembled at the Anderson home, two cars, occupied by the disturbing teen-agers, entered the driveway at the Anderson home. The appellant, who had been informed of the events that had taken place at the schoolhouse, immediately walked out into the driveway and ordered the occupants of the cars to leave. Both cars left immediately. But a few minutes later one of the cars returned to the Anderson home. There is a decided conflict in the evidence on the question as to whether the car was actually driven into the Anderson driveway or not. But another firecracker was thrown from the

car, and the appellant fired two shots in the direction of the car. The shots used were No. 7 bird shots. One of the shots struck the appellee in the eye, resulting in the complete loss of sight in that eye; and it is for that injury that the appellee sought to recover damages in the declaration filed in the case.

██ █ The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is that the court erred in overruling the appellant's motion for a directed verdict at the close of the plaintiff's evidence and at the close of the entire case. But we think there was no error in the court's action in overruling those motions. Although it may be conceded that the evidence showed that the appellant acted under strong provocation when he fired the shots to repel a second intrusion of the teen-age boys upon his premises after he had ordered them to leave, it cannot be said that the appellant fired the shot in necessary self-defense, or in the necessary defense of the members of his family and the invited guests, or that the appellant at the time he fired the shot, was in any immediate danger of suffering bodily harm at the hands of any members of the teen-age group. The appellant had a right to use such reasonable means as might be available and appropriate to repel the intrusion. But the appellant did not have the right to use a deadly weapon to repel the intruders under the circumstances testified to by the witnesses. █ One has a right to defend his home and the members of his family and other persons in the home, and to protect his property from intruders and trespassers. But one does not have the right to use means that are unreasonable, or force in excess of the force reasonably necessary, to prevent the intrusion. "While a man may use as much force as is necessary in the defense of his property, it is generally held that in the absence of the use of force on the part of the intruder, he is not justified in inflicting great

bodily harm or endangering life." 4 Am. Jur., p. 161, Assault and Battery, par. 63.

"The use of a deadly weapon in the protection of property is generally held, except in extreme cases, to be the use of more than justifiable force, and to render the owner of the property liable, both civilly and criminally for the assault." 4 Am. Jur. p. 163, Assault and Battery, par. 64.

In the case of Lizana v. Lang, 90 Miss. 469, 43 So. 477, the Court held that the fact that the difficulty was provoked by the plaintiff afforded no justification for an excessive assault and battery.

"A mere trespass on the lands of another, however wrongful it may be, if unaccompanied by such force as to make it a breach of the peace, will not justify or excuse resort to the use of a deadly weapon to drive the intruder off." 4 Am. Jur., p. 166, Assault and Battery, par. 71.

The issue of liability vel non in this case was properly left to the jury to determine.

It is next argued on behalf of the appellant that the court erred in admitting the testimony relating to medical and hospital expenses incurred on behalf of the plaintiff amounting to the total sum of $542.10.

The plaintiff himself testified that he did not pay the hospital bills, the doctors' bills and other items of expense incurred on account of his injury, and the testimony shows that these hospital and medical expenses were paid by the plaintiff's sister. The testimony relating to these items was objected to at the time that it was offered, and after the testimony had been admitted the defendant requested an instruction that the jury should not take into consideration these items of expense in fixing the amount of damages, if any, to be awarded to the plaintiff.

The appellant contends that the jury should not have been permitted to take into consideration the above

mentioned medical expenses and hospital expenses in fixing the amount of damages, if any, to be awarded to the appellee in this case, because the proof showed that the expenses had been paid by the appellee's sister. There are many courts which hold, however, that the defendant in a case of this kind cannot take advantage of the fact that the doctor's bills and hospital expenses were paid for the plaintiff by members of his family, or by other persons, and thereby prevent the plaintiff from recovering the amount of such expenditures as an element of damage. 15 Am. Jur. p. 616, Damages, par. 199, and cases cited.

In the case of Denver, R. G. R. Co. v. Lorentzen, 24 C. C. A. 592, 49 U. S. App. 81, 79 F. 291, the Court held that the fact that the brothers of a person injured by the negligence of another may have paid the doctors' and nurses' bills which she had incurred did not prevent her from recovering the amount of such expenditures as an element of damages; and the Court in that case said: "The liability of the defendant company for the expenses in question rested upon the ground that they were rendered necessary by its neglect of duty, and that liability was not altered, no matter what arrangement the plaintiff may have made for their payment, or whether she ever pays them. City of Indianapolis v. Gaston, 58 Ind. 227; Klein v. Thompson, 19 Ohio St. 571; Pennsylvania Co. v. Marion, 104 Ind. 237, 3 N. E. 874."

In the case of Skillen v. Eagle Mtr. Co., 107 N. J. Law 211, 152 A. 854, the Court held that payment of hospital bills by the plaintiff's brother and sister under the circumstances disclosed by the record in that case, did not prevent the plaintiff from recovering the value of the service represented by the bill from the one responsible for the injury.

In the case of Chicago, D. & G. B. Transit Co. v. Moore, et al., (C. C. A.) 259 F. 490, the Court held that where two sisters, passengers on a steamer, contracted

typhoid fever as a result of drinking impure water furnished, they could recover for medical expenses, and the expenses of nurses, though such sums were paid by their parents. The Court in its opinion in that case said: ''Notwithstanding the conflict of authority, we think the fact that libelant's parents, or one or the other of them, paid the doctors' and nurses' bills and the charges of the woman who helped should not preclude recovery.''

The case that we have here is unlike the case of Galtney, et al. v. Wood, 149 Miss. 56, 115 So. 117, in which the Court held that a married woman could not as a part of her damages for personal injuries, recover for necessary medical bills and hospital bills not shown to have been paid or contracted to be paid from her separate estate. That case was decided upon the theory that, in the absence of proof to the contrary, the husband, and not the wife, was legally liable for the payment of the wife's necessary medical expenses and hospital expenses. But in this case the appellee's sister paid the medical and hospital bills for the appellee, although she was in no way legally liable for the payment of same; and we do not think that the payment of those expenses by the appellee's sister inured in any manner to the benefit of the appellant, or that such payment relieved the appellant from liability for those items as an element of damages for which the appellee was entitled to recover.

As stated by the Court in the case of Klein v. Thompson, supra, the payment of the doctors' bill and hospital expenses by the appellee's sister was not intended as a satisfaction of any part of the appellee's claim against the appellant, and we think it ought not to be held to have that effect. If in this case the appellee succeeds in collecting the amount of the damages awarded to him, he will be placed in possession of the means to enable him to return to his sister the money advanced

by her for the payment of the medical bills and hospital expenses.

■■■ But, it is said that, when the plaintiff in a case of this kind is a minor, medical, surgical, hospital and nursing expenses incurred in curing or relieving his injuries are recoverable, if at all, by his parent or guardian, and not by him in a suit of this kind, unless it be shown that he alone is responsible therefor by reason of his emancipation or the incompetency or death of his parents. The record shows, however, in the case that we have here, that the appellees sued herein by his father as next friend; and whatever merit the above mentioned argument might have had, if the father had not appeared as next friend, and we express no opinion on that point, the father, by bringing the suit as next friend, waived in the appellee's favor the right to recover the expenses of medical and hospital treatment. Carangelo v. Nutmeg Farm, 115 Conn. 457, 162 A. 4, 82 A. L. R. 1320; White v. Seitz, 258 Ill. App. 318; McHugh, et al. v. Hirsch Clothing Co., Inc., 308 Ill. App. 272, 31 N. E. 2d 326.

■■■ The appellant next contends that the court erred in submitting to the jury the question of punitive damages. But we think there was no abuse of discretion by the trial judge in submitting to the jury the question of punitive damages. In the case of Wagner v. Gibbs, 80 Miss. 53, 31 So. 434, 92 Am. St. Rep. 598, the Court held that in an action for assault and battery punitive damages may be allowed, if the assault is of a wanton, malicious or brutal nature. See also Thomas v. Mickel, 214 Miss. 176, 58 So. 2d 494. The fact that the appellant may have been justly provoked by the intrusion of the appellee and his conpanions after he had ordered them to leave afforded no justification for the appellant's use of a deadly weapon to expel the intruders or to retaliate for the explosion of the firecracker in the driveway.

Nor does the mere fact that the assault resulted from sudden passion take malice out of the case. Malice may be presumed from the manner in which an assault is made when considered in the light of the surrounding circumstances as shown by all of the evidence in the case.

■■■ Finally, the appellant contends that the court erred in granting the plaintiff's Instruction No. 3, which reads as follows:

"The court instructs the jury for the plaintiff that, in addition to actual damages, if any, if you believe from a preponderance of the evidence in this case that the defendant acted willfully in discharging a shotgun at the plaintiff, then you may, in your discretion and in addition thereto, assess punitive damages, that is, damages by way of punishment to the defendant so as to compel him to have a proper regard for the rights of the public."

The appellant says that there is no proof that the appellant's conduct was willful and that the above mentioned instruction should not have been given, and that, even if the plaintiff was entitled to have the question of punitive damages submitted to the jury, it should not have been submitted in an instruction telling the jury that the appellant was acting without a proper regard for the public.

But in the case of Yazoo and Mississippi Valley Railroad Co. v. Hardie, 100 Miss. 132, 55 So. 42, 967, this Court said:

"Exemplary or punitive damage is additional to compensatory damage, and such damage is only allowed for the public benefit. Punitive damage is never allowed for the purpose of enriching the injured party. Compensation is afforded him and that is all he can justly seek for any individual grievance. If the law considered only the individual no punitive damage would be allowed. The theory of the law authorizing the

imposition of punitive damage is wholly outside of individual consideration. Such damage is allowed for the public good, and for the purpose of deterring others from like offenses."

And in the case of Yazoo and Mississippi Valley Railroad Co. v. May, 104 Miss. 422, 61 So. 449, this Court said: "* * * in punitive or exemplary damages the award is in the nature of a punishment for wrongdoing and an example, so that others may be deterred from the commission of such wrongs and the public be properly protected." See also, Neal v. Newburger Co., 154 Miss. 691, 123 So. 861.

In view of the statements made in the opinions cited above, we would not be justified in holding that the granting of the above mentioned instruction constituted reversible error.

We have examined the other assignments of error, which have been discussed in the appellant's brief; and in our opinion none of them has sufficient merit to require a detailed discussion.

▆▆▆ After this case had been set for argument on this appeal, the appellant filed a motion to reverse and remand the case to the circuit court, on the ground that the presiding judge had failed to sign the minutes of the last day of the December 1952 term of the court during which the case was tried; and a certified copy of the minutes was attached to the motion. But the judgment in this case was entered on Wednesday, December 10, 1952, and the order overruling the motion for a new trial was entered on Thursday, December 11, 1952. The minutes of both of those days were properly signed by the presiding judge. The failure of the presiding judge to sign the minutes on the last day of the term, which was Saturday, December 20, 1952, did not affect the validity of the proceedings of the court in this case. The motion to reverse and remand is therefore overruled. Willette v. State, .......... Miss. .........., 69 So. 2d 407.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

All justices concur except *Gillespie, J.,* who took no part.