GILL *v.* L. N. DANTZLER LUMBER CO.*

(Division B. March 18, 1929.)

[121 So. 153. No. 27791.]

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 3229, p. 1192, n. 45; Assault and Battery, 5CJ, section 2, p. 616, n. 9; Master and Servant, 39CJ, section 1506, p. 1306, n. 10; p. 1307, n. 13. Assault and Battery, defined, see 2 R. C. L. 526; 1 R. C. L. Supp. 561; 4 R. C. L. Supp. 116; 5 R. C. L. Supp. 100; 6 R. C. L. Supp. 100; 7 R. C. L. Supp. 49. On the question of liability of master for acts not within scope of servant's employment see annotation in 27 L. R. A. 164; 18 R. C. L. 794; 3 R. C. L. Supp. 849; 4 R. C. L. Supp. 1206.

*L. W. Maples* and *Gex & Russell,* for appellant.

*Ford, White, Graham & Gautier,* for appellee.

Argued orally by *L. W. Maples,* and *W. J. Gex,* for appellant, and *W. M. Graham* and *E. J. Ford,* for appellee.

GRIFFITH, J. There have been two trials of this case in the circuit court of Harrison county. The first trial at the October, 1927, term resulted in a verdict of ten

thousand dollars in favor of the plaintiff. This was set aside by the court, and on the second trial at the October, 1928, term there was a verdict for the defendant; the verdict being directed by a peremptory instruction.

When the verdict and judgment in the first trial was set aside and a new trial ordered, the plaintiff during the term obtained a bill of exceptions which, according to the statement in the conclusion of said bill of exceptions, contained "a true and correct recital of all that occurred at the trial of said cause or that could or should be reflected in the record of said cause." The said bill of exceptions shows that the declaration contained two counts, similar however in so far as concerns the first matter herein dealt with, and that the first count, as it stood at the coming on of the trial, was in the following words and figures:

"Now comes the plaintiff, Irvin Gill, by his attorney, and complains of and against the defendant, the L. N. Dantzler Lumber Company, a corporation organized and existing under and by virtue of the laws of the state of Mississippi, with its domicile and principal place of business at Gulfport, Harrison county, Mississippi, in an action of trespass upon the case:

"For that whereas, to-wit, on the 3d day of August, 1927, the defendant herein was and is the owner of a large number of acres of land in Harrison county, Mississippi, and that the defendant owned and operated a farm located in North-east Harrison county known as the Morris Hill Farm; that the said Morris Hill Farm is a very large plantation and that there is located upon said farm a large number of houses; all of which houses are owned and controlled by the defendant herein; that the defendant had as manager of the said Morris Hill Farm one Brown Blackwell; that the said Brown Blackwell had complete supervision and control of the said farm and all of the houses thereon located; that the said Brown Blackwell, as the foreman and manager of the said farm,

had authority to let said houses and do all things in connection with the tenancy of said houses in the like manner that he had authority to supervise said plantation, and that the acts of the said Brown Blackwell were the acts of the defendant herein, he being the vice-principal and boss man in charge of said plantation and all of the houses thereon.

"That prior to said date hereinabove mentioned the plaintiff herein had been and was working for Harrison County in building and constructing roads; that he is a young man; that he had, up to said date aforesaid, enjoyed a good reputation among his friends and associates, and that some time prior to said date he had been lawfully put into possession of one of the houses located upon said farm by the said Brown Blackwell; that on said date aforesaid, early in the morning, before the plaintiff and his wife had been able to prepare their breakfast, the foreman or manager of the said Morris Hill Farm, Brown Blackwell, came to the house which the plaintiff and his family were occupying and committed a willful, illegal, wanton and malicious assault upon the plaintiff and his wife, without provocation, by cursing them and vilifying them and threatening to take their lives and ordered them to move out of the said house at once; that the plaintiff became excited because of the fact that his wife was in a delicate condition and he feared that the abuse which the defendant, through its agent, was thrusting upon him and his wife would likely cause his wife to suffer in the loss of health or probably her life; that the plaintiff and his wife took their small child from the bed and carried it over to a nearby neighbor's, where they washed and dressed the said child, leaving their breakfast in the stove to burn up and also leaving all of their household furniture and their worldly possessions in the house without any assurance they would in any wise be taken care of and that the plaintiff was forced to go out and look for another

house in which to live, make arrangements to have his household furniture and worldly possessions moved into another house; that it was several days before the plaintiff herein was able to locate another house and get moved into same; that he was greatly humiliated before his friends and acquaintances; worried on account of what might be the result of the excitement to his wife and the result of said excitement to their small child, and that all of said worry caused him to suffer in serious illness; that all of the acts of the said Brown Blackwell, the boss or foreman of the said farm, was done by him while acting within the scope of his employment by the defendant herein, the L. N. Dantzler Lumber Company.

"The plaintiff herein alleges that by reason of the treatment which the defendant, through its said agent, gave him on the said date aforesaid, as has hereinabove been set out, in illegally, wantonly, willfully and maliciously evicting him from said house, as above stated, he has been damaged in the sum of twenty thousand ($20,000) dollars.

"Wherefore, he brings this his suit and demands judgment of and against the defendant herein in the said sum of twenty thousand ($20,000) dollars and all costs herein."

When the first witness, the plaintiff, was introduced, he testified not only as to facts constituting an assault, but was proceeding further to state that the defendant's foreman or superintendent, on the occasion involved, committed a battery upon him, whereupon counsel for defendant immediately objected to any evidence of a battery because the declaration contained no charge or charges of battery. Counsel for plaintiff thereupon moved the court *ore tenus* to be allowed to amend the declaration so as to charge a battery, and over the objections of defendant the amendment was allowed; the amendment as orally announced by counsel for plaintiff to be in the following words: "We have amended the

declaration to read that he committed a willful, illegal, wanton and malicious assault and battery upon plaintiff by taking hold of him and striking him and his wife and by cursing and taking hold of him and his wife without provocation.'' Upon further objection by defendant the proposed amendment was amended so as to strike out the charge so far as concerned plaintiff's wife.

The proposed oral amendment was not made of record on the minutes of the court, nor was the motion therefor written out and filed with the clerk. This court is definitely committed to the practice that, in the circuit court, ''a motion of this character should not be made orally, but should be in writing and filed with the clerk, and the judgment of the court, overruling or sustaining it, should be entered on the minutes. In the absence of such an order entered on the minutes of the court, the declaration remains as it was originally written.'' *Lackey* v. *Railroad Co.,* 102 Miss. 339, 59 So. 97; *Oliver* v. *Miles* 144 Miss. at page 857, 110 So. 666, 50 A. L. R. 357; *Pig ford* v. *Howse,* 149 Miss. 692, 115 So. 774.

Since, in view of the omissions aforesaid, the declaration stood and must stand, so far as the first trial is concerned, as it was originally written, no proof could be received except such as came within the charges of the said original declaration, from which it follows that no proof could be received of a battery under a declaration which charged an assault only. A battery is an offense of a higher grade than an assault, and therefore the charge of an assault does not include a battery—no more than would a charge of manslaughter include a charge of murder. ''An assault is simply an attempt to hurt, with the power to hurt, while the battery is where the hurt is done pursuant to the assault, and a defendant should not be convicted of what he has clearly not done.'' *Montgomery* v. *State,* 85 Miss. at page 336, 37 So. 836. Not only is the above definition applicable here, but also the concluding quoted words, that is, that the defendant

should not be cast in damages for what clearly is not charged in the declaration against it.

The trial proceeded nevertheless as if the amendment had been made, and all the details of the battery were submitted to the jury. What effect the inadmissible part of the testimony, that is to say, that part which dealt with the battery, had upon the jury in fixing the amount of the damages, we of course cannot know, except only that it must be accepted as certain that it had some effect; indeed, we could perhaps go further and say it must have had considerable effect. We have no way to apportion the result; in fact, it is not within our province so to do. We are therefore without rightful power to restore the original verdict and judgment as was done in *De Armond* v. *Fine*, 111 Miss. 737, 72 So. 145, and *Ennis* v. *Y. & M. V. R. Co.*, 118 Miss. 509, 79 So. 73—assuming that there was no other error in the first trial, as to which other error, if any, we express no opinion.

This brings us to the second trial, wherein, at the close of plaintiff's evidence, the defendant, without having put on any witnesses to dispute or take issue with the plaintiff's case on the facts, moved to exclude and for a peremptory instruction, which was granted; the court stating in a dictated opinion, which is a part of the record, that although the defendant's agent Blackwell was shown by the testimony to be connected with the defendant and in charge of the houses on the defendant's farm, yet the actions of the said agent in charge in ejecting the plaintiff in the manner averred was purely the private enterprise of the said Blackwell, or in any event was not in furtherance of the interest of the defendant. That the granting of the peremptory instruction was error would seem to require little more than a statement of the case, confining ourselves, as we must, to the second trial. It is shown by the evidence that the plaintiff was occupying a house on the Morris Hill Farm, the property of the defendant, L. N. Dantzler

Lumber Company.; that Brown Blackwell was the superintendent of said farm; and that said Blackwell had charge of all the houses located thereon. The wrongs and injuries complained of occurred when the said superintendent, Brown Blackwell, went to the house occupied by plaintiff, and there ejected the plaintiff in the manner substantially as charged in the declaration, which declaration had been properly amended, in fact had been redrawn, before entering upon the second trial. If, as the undisputed testimony on the second trial shows, the agent Brown Blackwell was the superintendent of said farm and had charge of the houses thereon, then it must follow as a logical and legal consequence that, if any eviction from one of these houses was to be enforced, Blackwell was the particular person to do it, or have it done under his personal direction. In doing it himself he manifestly was acting within the general scope of his duty and employment, and this is not changed by the fact that he went wild while doing it. The rule of *respondeat superior,* in such a case, would lose all its vigor and purpose if it operated only while the agent was performing his duties rightly and ceased to apply when the agent performed wrongfully. ''The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another.'' *Richberger* v. *Express Co.,* 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522.

*Reversed and remanded.*