835 So.2d 76 (2003)
Jane DOE, as Mother and Next Friend of John Doe, a Minor
v.
The SALVATION ARMY.
No. 2001-CA-01599-SCT.
Supreme Court of Mississippi.
January 23, 2003.
Beth Burton, Jackson, Edward Blackmon, Canton, Christopher Brandon Glass, Birminghan, AL, Jerry L. Beasley, attorneys for appellants.
*77 Robert L. Gibbs, Teselyn Afrique Melton, Amy Manderson Klotz, Jackson, attorneys for appellee.
EN BANC.
EASLEY, J., for the Court.

STATEMENT OF THE CASE
¶ 1. This case involves whether the trial court correctly refused to submit the issue of punitive damages against The Salvation Army (TSA) to a jury. In December, 1998, Jane Doe, mother and next of friend of John Doe, a minor, filed in the Holmes County Circuit Court a civil action for damages against Gregory Peters (Peters), Chris Flanagan (Flanagan), and The Salvation Army (TSA). There were actually four Jane Doe mothers and four John Doe minors involved in the suit. (Jane Doe and John Doe plaintiffs are collectively named hereinafter as "the Does"). The lawsuit arose out of the alleged sexual assaults by Peters against the four minor boys. The boys were attending a summer camp at a TSA facility in Holmes County, Mississippi. Flanagan was an officer at the camp, owned and operated by TSA. Peters, a counselor at the TSA camp, allegedly assaulted the minors.
¶ 2. A trial ensued, and a jury returned a verdict finding that Peters sexually assaulted the minor boys while acting as an agent of TSA. Further, the jury found by a preponderance of the evidence that TSA was negligent in its training, supervising and retaining of Peters and the failure was a proximate cause of the injuries. The four minor Does were awarded $30,000 each for a total of $120,000 in compensatory damages. As to the percentage of liability, the jury attributed 5% fault to Peters, 10% to Flanagan and 85% to TSA.
¶ 3. At the conclusion of the trial, the issue of whether punitive damages should be submitted to the jury was raised. After consideration, the trial court declined to submit the issue to the jury. The trial court ruled:
Before this Court is the matter of whether or not the jury should consider the issue of punitive damages. Punitive damages are liable if a person acted with actual malice, gross negligence which evidences the willful, wanton, or reckless disregard for the safety of others, or committed actual fraud. I do not find from the evidence that there was any actual malice on the part of the Salvation Army or Chris Flanagan.
I find that the Salvation Army was negligent in the supervision of Gregory Peters when children, who came to the camp for one week, started to calling him gay. When he had an anxiety attack, these things should have put the Salvation Army on notice that Mr. Peters needed closer supervision.
But whether this amounts to gross negligence, gross negligence is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.
Whether the Salvation Army intentionally failed to supervise Gregory Peters, this Court did not find any intentional acts on the part of the Salvation Army up to the time of this incident.
This Court finds that the Salvation Army could have and should have done more after learning of the incidents, after learning of the incident, but this does not go to the issue of punitive damages in that this is actions that was taken [sic] by the Salvation Army after the incident. This Court must only consider the actions of the Salvation Army that led up to the incident that caused harm to the plaintiffs. Hopefully, this matter and the courage of these four young *78 men will result in incidents like this not occurring in the future, and that the Salvation Army will take a stronger responsibility in supervising their employees. Therefore, this Court finds that this is not a case for punitive damages, and the issue will not be submitted to the jury.
¶ 4. On July 11, 2001, a motion for new trial was filed by the Does. An amended motion for new trial was filed on August 1, 2001. On August 28, 2001, a hearing was held on the motions for punitive damages. The trial court ruled that it stood by the former ruling "that The Salvation Army was negligent and not grossly negligent, which is necessary in order for this matter to be presented to the jury on the issue of punitive damages." The trial court then denied the motion for new trial on the issue of punitive damages. On September 13, 2001, the trial court judge entered an order denying both the motion for new trial and the amended motion for new trial. On October 4, 2001, a notice of appeal was filed by the Does to this Court raising the sole issue of punitive damages.
¶ 5. This Court finds that the trial court ruling denying the submission of the punitive damages issue to the jury should be affirmed.[1]

STATEMENT OF THE ISSUE
Whether the trial court erred by refusing to submit the issue of punitive damages to the jury and denying the motion for new trial on the issue of punitive damages?

DISCUSSION
¶ 6. In Alpha Gulf Coast, Inc. v. Jackson, this Court set forth the standard for punitive damages as follows:
The applicable Mississippi statute concerning punitive damages is § 11-1-65. This statute states in part the following:
(1) In any action in which punitive damages are sought:
(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.
(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount
...
Miss.Code Ann. § 11-1-65 (Supp.2001) (emphasis added). The statute and case law specifically give the court the authority to initially determine whether the particular facts of a case merit the *79 submission of the issue of punitive damages to the jury. Id. Miss Code Ann. § 11-1-65(1)(d) (Supp.2001). In Ross-King-Walker, Inc. v. Henson, this Court held the following:
In determining the propriety of submitting the issue of punitive damages to the jury, the trial court decides whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1191 (Miss.1996). See also Summers v. St. Andrew's Episcopal Sch. Inc., 759 So.2d 1203, 1215 (Miss. 2000); Wallace v. Thornton, 672 So.2d 724, 728 (Miss.1996); Thomas v. Harrah's Vicksburg Corp., 734 So.2d 312, 322 (Miss.Ct.App.1999). Clearly, the trial court is the gatekeeper for the issue of whether punitive damages, in cases involving both intentional and non-intentional torts, should be submitted and considered by a jury. [FN1]
Punitive damages are assessed in extreme cases and are intended to be an example and warning to others. Wallace, 672 So.2d at 728. "However, there is no right to an award of punitive damages and such damages are to be awarded only in extreme cases." South Central Bell v. Epps, 509 So.2d 886, 892 (Miss.1987). This Court held that a plaintiff can recover punitive damages only if there is a demonstrated willful or malicious wrong or if there is gross, reckless disregard for the rights of others. Boling v. A-1 Detective & Patrol Serv., Inc., 659 So.2d 586, 588 (Miss. 1995).
Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 732-33 (Miss.2001)(emphasis added) & (footnote omitted).
¶ 7. There is no right to punitive damages. S. Cent. Bell v. Epps, 509 So.2d 886, 892 (Miss.1987). See also Aqua-Culture Techs., Inc. v. Holly, 677 So.2d 171, 184 (Miss.1984). Rather, the statute clearly states that if certain criteria are met then the court determines whether the issue of punitive damages may be submitted to the trier of fact. Miss.Code Ann. § 11-1-65(1)(d) (Rev.2002).
¶ 8. The Does argue that the issue of punitive damages should have been submitted to the jury. The argument is based in part upon their belief that the trial court failed to consider whether punitive damages should have gone before the trier of fact on the theory of vicarious liability and for TSA's own conduct. They claim that punitive damages are recoverable in situations involving proven assault. They further claim that the issue of punitive damages against an employer is properly submitted to a jury for consideration when intentional acts have been committed by its agent. The Does rely upon Jordan v. McKenna, 573 So.2d 1371 (Miss.1990); Anderson v. Jenkins, 220 Miss. 145, 70 So.2d 535 (1954); Barnes v. Town of Burnsville ex rel. Till, 385 So.2d 623 (Miss.1980); and Gill v. L.N. Dantzler Lumber Co., 153 Miss. 559, 121 So. 153 (1929).
¶ 9. In Jordan, a rape victim was awarded punitive damages. Jordan, 573 So.2d at 1378. Likewise in Anderson, a teenager who lost an eye during a conflict was awarded punitive damages. Anderson, 220 Miss. at 154-55, 70 So.2d at 540. This Court in Barnes affirmed an award of punitive damages against a police officer who followed through with a previous threat of dragging a driver out of his car and knocking him in the head the next time the driver was stopped for speeding. Barnes, 385 So.2d at 624. In each of the cases in which the Does rely for authority, *80 the person that assaulted the plaintiffs was found liable for punitive damages. Certainly, these cases are instructive as whether the issue of punitive damages may be given to the trier of fact to consider against the assaulter, Peters. However, each of these cases is distinguishable from the case sub judice because none of them found an employer liable for the punitive damages as the result of an employee's acts.
¶ 10. The Does also cite Dantzler claiming that the issue of punitive damages against an employer can be submitted to the jury when an employee commits an intentional tort. However, a careful review of Dantzler reveals that the issue of punitive damages was not raised by any party, and consequently it was appropriately never addressed by this Court. The Does correctly cite Dantzler for the proposition that a master who places a servant in a position of trust or authority is responsible for the actions of his servant. Dantzler, 121 So. at 156. In fact, in Dantzler, a business was sued for the actions of its employee. Id. Nevertheless, Dantzler does not reach the issue of punitive damages and is not persuasive.
¶ 11. The jury did find that TSA was 85% liable for the actions of its employee, Peters. As a consequence, the Does have received an award of $120,000.00 in total compensatory damages. Of the compensatory damages awarded the Does, Flanagan is obligated to pay 10 % and TSA 85% of the total award. Accordingly, TSA has shouldered 85% of the liability for the actions of its employee, Peters. Flanagan has shouldered 10% liability for being the camp officer. However, liability for compensatory damages does not signify that punitive damages must be assessed against an employer. In fact, punitive damages are never automatic. See Miss.Code Ann. § 11-1-65.
¶ 12. The Does further rely upon Duggins v. Guardianship of Washington, 632 So.2d 420, 430 (Miss.1993), and Independent Life & Acc. Ins. Co. v. Peavy, 528 So.2d 1112 (Miss.1988), for the rule that a principal can be held liable for the acts of its agent and any associated punitive damages. In Duggins a law partner was held vicariously liable for the actions of an attorney with whom he associated pursuant to the Uniform Partnership Act (UPA). Duggins, 632 So.2d at 427-28. This Court determined that the handling of client funds was within the scope of a lawyer's legal representation and in furtherance of the partnership. Id. at 428. This Court also stated that "[s]pecifically, § 79-12-27 of the UPA imposes a liability on a partner to make good a loss of another partner's actions when acting with the scope of the partnership." Id. at 430. Ultimately, this Court found that punitive damages could be assessed against Duggins for the actions of his partner. Id. at 430.
¶ 13. In Peavy, conflicting evidence indicated that insurance agents persuaded an insured to withhold filing a claim. Peavy, 528 So.2d at 1115. Peavy was injured and totally disabled for a period of time. Id. at 1113. The insurance policy provided that the insured notify the company during the period of total disability in order to collect the benefits. Id. Conflicting testimony indicated that Peavy was in the process of filing a claim when two agents went to his home and allegedly persuaded him not to file the claim at that time. Id. at 1114. Because the insured relied upon the advice of the agents and filed at a later time, the insurance company denied the insured's claim for among other things, the failure to timely file the claim. Id. at 1115. This Court reviewed the conduct of the company and not the actual denial of the benefits. Id. This *81 Court stated that "[b]y thus `sandbagging' Peavy, Watson and Davis effectively manufactured the arguable reason which Independent Life would later use to deny Peavy's claim." Id. This Court upheld the punitive damages awarded at the trial level. Id. at 1116. The Court reasoned that the misrepresentations of the agents "constituted either an intentional wrong or such gross negligence as to evidence reckless disregard for Peavy's rights." Id.
¶ 14. Both Duggins and Peavy involved actions within the scope of a partnership and within employment as an insurance agent. The cases were within the parameters of the Uniform Partnership Act and insurance contract law, and not within the confines of an assault. In Duggins, the attorney's actions were determined to be within the confines of employment and the UPA. The UPA specifically provided for partner's being liable for another partner's actions when done in the scope of the partnership. In Peavy, the actions of the agents and the alleged advice given actually aided the insurance company to have a reason to deny coverage. Thus, the insurance company had a benefit from the agents' acts, in that the company had a reason to deny Peavy benefits.
¶ 15. This Court addressed scope of employment in a general context and not in terms of punitive damages:
Where the servant, in committing the wrongful deed, acts about the master's business for which he is employed, the master is liable, although in doing the act, the servant stepped beyond his authority. Even though the conduct of the servant was unauthorized, it is still in the scope of his employment, if it is of the same general nature of, or incidental to, the conduct authorized. In order for the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and gone about some purpose of his own not incident to his employment.
Horton v. Jones, 208 Miss. 257, 259-60, 44 So.2d 397, 399 (1950) (citations omitted).
¶ 16. In the punitive damage context, Miss.Code Ann. § 11-1-65(1)(a) requires that a claimant must prove by "clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." (emphasis added).
¶ 17. When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1191 (Miss.1996). An abuse of discretion standard is implemented when this Court reviews the trial court's decision of whether a case warrants punitive damages to be sent to the trier of fact. Hurst v. Southwest Miss. Legal Servs. Corp., 708 So.2d 1347, 1351 (Miss.1998). After reviewing the evidence, the trial court found no actual malice, no intentional acts and no gross negligence by TSA. The trial court also denied the motions for new trial based upon a determination of no gross negligence.

TSA
¶ 18. When looking at the totality of the circumstances, a reasonable, hypothetical trier of fact could not find either malice or gross neglect or reckless disregard by TSA. TSA is a Christian organization that promotes the Scriptures and God, not sexual assault on minors. Peters was clearly not acting within the scope of his employment with TSA at the time of the assault. The case sub judice is distinguishable *82 from Duggins and Peavy. In Duggins, the Court found that the attorneys associated as equal partners for the guardianship case. Duggins, 632 So.2d at 426. Duggins initiated the partnership on the case with Barfield in order to have assistance on a medical malpractice case associated with the guardianship. Id. The Court also held that "[b]oth attorney's had an equal stake in the case and depended upon each other's abilities in proceeding with the case." Id. The UPA, also, had specific statutory guidelines which holds a partner liable for the acts of a partner. In addition, this Court held that Barfield's acts were committed while in furtherance of the partnership and that the handling of client funds was within the confines of the partnership. Id. In Peavy, the insurance company initially profited by the alleged actions of its agents. The company benefitted by the agents' alleged actions which caused a valid reason to deny Peavy's claim for total disability.
¶ 19. In the case sub judice, this Court finds that it cannot be said that Peters's actions were within the scope of his employment as a counselor. Nor can it be held that TSA had any benefit by Peters's actions. In fact, Peters's actions have not helped TSA in any way, rather, it has cast a negative cloud over the whole situation and has arguably hurt TSA's standing. Assaulting young boys has nothing to do with the goals and doctrines of TSA and its Christian philosophy. While TSA employed Peters, his acts only benefitted his own desires, and his association with TSA in no way promoted or benefitted the TSA organization.
¶ 20. Furthermore, in the record excerpts provided to this Court for review, there is no indication that TSA had any notice of any of these acts until after the boys left the camp. The limited deposition testimony of Peters cited in the record, at best, indicated that while he did tell some of his friends who were staff members of his gay or bisexual tendencies, Peters did not inform the unit director or anyone with a military designation. What is more, the jury made no determination that TSA knew or should have known of any alleged sexual tendencies. There was no clear and convincing evidence that TSA acted with actual malice or gross negligence. Accordingly, the trial court did not abuse its discretion by declining to submit to the jury the issue of punitive damages against TSA.

CONCLUSION
¶ 21. This Court finds that the Holmes County Circuit Court did not err in refusing to submit the issue of punitive damages to the trier of fact. Therefore, the circuit court's judgment is affirmed.
¶ 22. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] Peters was criminally charged with sexual assault by the State of Mississippi. After the conclusion of the civil trial, on October 9, 2001, Peters pled guilty to the charges before the Holmes County Circuit Court. Following the plea, the circuit judge sentenced Peters.